UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 13 CR 377-1 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ANKUR ROY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

In the days following a trial at which the jury convicted Ankur Roy of five counts of health care fraud, Doc. 98, one juror left a voice mail for the court's staff, Doc. 97, and another sent an email to the court's staff and called Roy's counsel, Docs. 99-100. Arguing that the email reveals juror misconduct, Roy has moved for a mistrial. Doc. 107. The motion is denied.

**Background**

Roy, the former owner and CEO of an outpatient medical clinic called SelectCare Health, Inc., was indicted in May 2013 for allegedly having defrauded Medicare and a private insurer by submitting false reimbursement claims. Doc. 1. After hearing nearly four days of testimony and argument, the jury began its deliberations late on a Friday afternoon and did not reach a verdict before leaving for the weekend. Doc. 86. One juror sent a note asking to be excused from further jury service based on a relative's illness, Doc. 92, but the court declined to excuse her on that ground. On Monday morning, the same juror called the court's staff to say that her wallet had been stolen and that she therefore would be unable to return to the courthouse. Despite the court's reluctance to release the juror from service and its willingness to arrange for her transportation to the courthouse, both parties urged the court to excuse her and to recall one of

the two alternate jurors; the court had sent the alternates home on Friday afternoon, but did not discharge them from jury service. *See* Fed. R. Crim. P. 24(c)(3) ("The court may retain alternate jurors after the jury retires to deliberate. The court must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged."). The alternate juror arrived just after lunch on Monday, and the court instructed the jury to begin deliberating anew. *See ibid.* ("If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew."). About four hours later, the jury returned a verdict of guilty on all five counts. Docs. 90, 98. Pursuant to Federal Rule of Criminal Procedure 31(d), the court polled the jurors individually to confirm that their verdict was unanimous.

The next morning, a juror ("Juror A") left a voice mail with the court's staff, saying that although "we all concluded that [the defendant] was guilty of Medicare fraud, … I think when we took the vote, we did not go by each count and take a vote each time[.]" Doc. 97 at 2. Two days later, another juror ("Juror B") sent an email to the court's staff describing in some detail what allegedly took place during deliberations, in which he was the lone dissenter in a room favoring conviction 11-1. Doc. 99. The email says that all but two jurors "had already expressed a strong dislike of the defendant and his defense counsel—from the very first day" of trial, *id.* at 1, and that "[o]n three separate occasions" before the close of evidence, he felt compelled to "ask[] the entire room of jurors to stop sharing their thoughts on the trial before deliberations started," *id.* at 2-3. Juror B's email also says that another juror ("Juror C") asked "if I was going to drag this out any longer, because he had to return to work and was not getting paid." *Id.* at 3. Juror C then announced that "no matter what happens, my verdict is for guilty." *Ibid.* When Juror B tried to "start a discussion about reasonable doubt concerning the defendant's knowledge

of the origin of the bank funds," another juror ("Juror D") "indoctrinated me on a CEO's legal obligations, stating that by law he is required to know where funds are coming from." *Ibid.* Two other jurors agreed with Juror D, one based on "his own experience in managing." *Ibid.* Thereupon Juror B sent a note to the court asking: "Is it the defendant's legal burden to know and investigate the source(s) of funding in his company's bank account? (with criminal liability)." Doc. 93. After consulting with the parties, the court responded: "The court has instructed you on the law, and you must abide by the court's instructions." Doc. 95. Finally, Juror B's email states that the only other juror who began deliberations not already inclined to convict Roy was the juror who failed to show up on Monday and who was replaced by the alternate. Doc. 99 at 1.

Roy has moved for a mistrial, arguing that Juror B's email reveals four instances of juror misconduct. First, Roy contends that Juror D's statement about a CEO's legal duties was an impermissible "extraneous influence" on the jury. Doc. 107 at 2-3. Second, Roy maintains that the jury impermissibly deliberated before the end of trial. *Id.* at 4. Third, Roy argues that Juror C's making known his "lack of employment compensation … influence[d] jurors on the need to complete deliberation in a hurry," thus causing the jury "not to consider all counts in the indictment." Doc. 111 at 4 (capitalization normalized). Fourth, Roy contends that the "extraneous statements and evidence" may have "pressure[d] the release[d] juror who by all accounts was [voting to] acquit[]" into not returning on Monday, and that "[t]he probability that the juror [who was] dismissed would have [voted to] acquit[] [is] predominantly creating the presumption of prejudice." *Id.* at 4-5. The court confirmed at the August 28, 2014 hearing on Roy's mistrial motion that these are the only grounds underlying the motion; Roy does not make any argument for a mistrial based on the contents of Juror A's voicemail.

## Discussion

Roy's motion for a mistrial is in practical effect a motion for a new trial. Absent exceptions not pertinent here, when a defendant moves for a mistrial, the Double Jeopardy Clause will not bar his subsequent retrial. *See United States v. Jorn*, 400 U.S. 470, 485 (1971); *United States v. Higgins*, 75 F.3d 332, 334 (7th Cir. 1996). Granting Roy's motion would therefore be the equivalent of granting a motion for a new trial, and so under these circumstances the standard for granting relief that applies to a new trial motion also applies to Roy's mistrial motion. *See United States v. Medina-Herrera*, 606 F.2d 770, 776 n.5 (7th Cir. 1979) (citing *United States v. Tateo*, 377 U.S. 463, 467 (1964)).

A new trial should be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Where the ground for a new trial is juror misconduct, "the court should look to the totality of the circumstances, including the nature of the extrinsic evidence, the manner that the evidence reached the jury, the factual findings, the investigation, and the strength of the government's case." 3 Charles Alan Wright & Sarah N. Welling, *Federal Practice & Procedure* § 587, p. 502 (4th ed. 2011); *see also Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005) ("How much inquiry is necessary (perhaps very little, or even none) depends on how likely was the extraneous communication to contaminate the jury's deliberations."); *United States v. Paneras*, 222 F.3d 406, 411 (7th Cir. 2000) ("[A] new trial is not automatically required whenever a jury is exposed to material not properly in evidence. Each case turns on its own facts, and on the degree and pervasiveness of the prejudicial influence possibly resulting.") (internal quotation marks and citations omitted). Although the defendant bears the burden of showing that the alleged juror misconduct resulted in prejudice, *see* Wright & Welling, *supra*, at p. 500; *Phillips v. Bradshaw*, 607 F.3d 199, 223 (6th Cir. 2010), "[i]n a criminal case, any private communication, contact, or

tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial," and the Government then bears the burden of showing that the contact was harmless.  *Remmer v. United States*, 347 U.S. 227, 229 (1954); *see also Mattox v. United States*, 146 U.S. 140, 150 (1892) (holding that "possibly prejudicial communications" between jurors and third parties will "invalidate the verdict, at least unless their harmlessness is made to appear"); *United States v. Torres-Chavez*, 744 F.3d 988, 997 (7th Cir. 2014); *United States v. Warner*, 498 F.3d 666, 680 (7th Cir. 2007).

When considering a motion for a new trial based on juror misconduct, however, "the trial court may not base its decision upon inadmissible testimony."  *Wiedemann v. Galiano*, 722 F.2d 335, 337 (7th Cir. 1983).  Federal Rule of Evidence 606(b)(1) provides that "a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment."  Fed. R. Evid. 606(b)(1).  However, Rule 606(b)(2) provides that a juror may testify that "extraneous prejudicial information was improperly brought to the jury's attention" or that "an outside influence was improperly brought to bear on any juror."  Fed. R. Evid. 606(b)(2); *see also Tanner v. United States*, 483 U.S. 107, 117-18 (1987); *United States v. Morales*, 655 F.3d 608, 631 (7th Cir. 2011).  Even then, Rule 606(b) "prohibits jurors from giving post-verdict testimony as to whether their deliberations, in fact, were prejudiced by the extraneous information or outside influence."  *Wiedemann*, 722 F.2d at 337; *see also Smith v. Phillips*, 455 U.S. 209, 215-16 (1982).  "Rule 606(b) draws a line in the sand between evidence of outside influences on the jury's deliberative process and evidence of the jury's own internal processes."  *Torres-Chavez*, 744 F.3d at 997.  While the former is sometimes admissible, the latter is not.  *See Tanner*, 483 U.S. at 117-18; *Torres-Chavez*, 744 F.3d at 997;

*United States v. King*, 627 F.3d 641, 650 (7th Cir. 2010) (holding that the district court's duty to investigate juror misconduct "arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality") (internal quotation marks omitted).

Roy's motion founders for the most part on Rule 606(b), which renders inadmissible nearly all of the relevant portions of Juror B's email. Juror D's statement during deliberations about the legal duties of a CEO, and the two other jurors' agreement with Juror D, do not involve any extraneous material or outside influence, but rather constitute purely internal matters. "[J]urors are expected to bring commonly known facts and their experiences to bear in arriving at their verdict. … Although jurors may not go beyond the record to develop their own evidence, they are entitled to evaluate the evidence presented at trial in light of their own experience." *Arreola v. Choudry*, 533 F.3d 601, 606 (7th Cir. 2008). Indeed, Seventh Circuit Pattern Criminal Jury Instruction 2.02 tells the jurors to "[u]se your common sense in weighing the evidence, and consider the evidence in light of your own everyday experience," and the court gave that instruction to the jury in this case, Doc. 103 at 6.

Roy does not claim that Juror D or any other juror brought in extrinsic evidence—say, a business school textbook, or a copy of the Illinois Business Corporations Act—for the jury to consider regarding a CEO's role or duties. Instead, the other jurors spoke based on their own knowledge and beliefs, including one juror's "own experience in managing." Doc. 99 at 3. This is a quintessential intrinsic influence barred by Rule 606(b) from admission. *See Torres-Chavez*, 744 F.3d at 997-98 (holding that jurors' post-trial statements that they drew negative inferences from the defendant's failure to testify were "intrajury influences on the verdict during the deliberative process" and thus inadmissible) (internal quotation marks omitted); *Arreola*, 533

F.3d at 606 (holding that a juror's "prior experience with an ankle injury constitutes an intrinsic influence that does not require an evidentiary hearing, let alone a new trial"); 27 Charles Alan Wright & Victor James Gold, *Federal Practice & Procedure* § 6075, p. 531 ("The exception for extraneous prejudicial information … does not apply where jurors use general background facts or data ….  Obviously, no juror can approach deliberations with an entirely clean cognitive slate.").  As the Seventh Circuit has explained:

> Jurors after all know many things that are not presented to them in the course of the trial, and doubtless use much of that background knowledge during their deliberations.  Lots of things mentioned in jury deliberations are outside the record.  Were the report of a juror who claims to have heard such a thing mentioned enough to require a hearing, few trials would end without a post-trial interrogation of the jurors; jury service would be even less popular than it is.

*United States v. Spano*, 421 F.3d 599, 605 (7th Cir. 2005) (holding that the jury's discussion of the defendant's "reputed mob connections" was intrinsic and thus barred by Rule 606(b)).

The same result obtains for Juror C's statement about his not being paid during jury service, which Roy alleges may have pressured the jury into a hasty conviction.  This, too, is purely internal to the jury and therefore a "statement made or incident that occurred during the jury's deliberations" that is barred from admission.  Fed. R. Evid. 606(b)(1); *see United States v. Fozo*, 904 F.2d 1166, 1171 (7th Cir. 1990) (the defendant's allegation that the "impending Christmas holiday caused the jury to rush its deliberations" held inadmissible under Rule 606(b)).  It bears mention that the jury heard about four days of testimony and deliberated for about four hours, so it cannot be said that the jury's deliberations were in any way hasty.

To the extent that Juror B charges that Juror C's or Juror D's statements coercively caused either Juror B's eventually voting to convict or the discharged juror's abnegating her duty to complete her service, such evidence is also barred by Rule 606(b), which, as noted above, provides that evidence of "the effect of anything on that juror's or another juror's vote; or any

juror's mental processes" is inadmissible.  *See United States v. Briggs*, 291 F.3d 958, 961 (7th Cir. 2002) (holding that Rule 606(b) barred the admission of a juror's post-verdict statement "that she had been 'intimidated' by other jurors into finding Briggs guilty"); *United States v. Ford*, 840 F.2d 460, 465 (7th Cir. 1988) (holding that a juror's post-verdict letter alleging "'many discrepancies and acts of improper behavior occurred by other jurors and specifically the jury foreman,'" as well as "that during deliberations, votes had been taken before all of the jurors had reviewed all of the evidence, that votes were cast verbally, and that there was 'extreme and excessive pressure on individuals to change votes,'" was inadmissible under Rule 606(b)).  With these portions of the email inadmissible, there is no admissible evidence to support three of Roy's four grounds for a mistrial.  *See Torres-Chavez*, 744 F.3d at 998 ("[T]he juror statements are inadmissible under Rule 606(b) ….  Without those statements, there is no basis for an attack on the impartiality of the jury[.]").

Juror B's allegations of premature deliberations may be admissible under Rule 606(b). *See United States v. Farmer*, 717 F.3d 559, 565 (7th Cir. 2013) ("Potentially prejudicial communications that occur before jury deliberations, however, are not wholly protected by Rule 606(b) and therefore may be considered by the district court in certain cases."); *Morales*, 655 F.3d at 631 ("The Defendants may be correct that the district court *could* have inquired about whether the discussions occurred and whether they constituted premature deliberations.").  But before granting a new trial on that ground, or even holding an evidentiary hearing, the court must independently "gauge whether the statements or conduct should be presumed prejudicial." *Farmer*, 717 F.3d at 565 (emphasis removed); *see also United States v. Paneras*, 222 F.3d 406, 411 n.1 (7th Cir. 2000).  In undertaking that inquiry, "the court must ignore any evidence about

the supposed actual effects of the statements or conduct on the jurors, and must rely instead on precedent, experience, and common sense." *Farmer*, 717 F.3d at 565.

Under governing precedent, Juror B's allegations regarding premature deliberations, even if true, are not presumed prejudicial. In *Farmer*, a juror submitted an affidavit averring that before the close of evidence, "one juror said, 'I wrote my verdict down right away and it hasn't changed yet,'" that "many [of the jurors] had already decided that the defendant was guilty," and that "'[t]here were numerous other comments made regarding the perceived guilt of the defendant during the trial [which] made it clear that an opinion other than guilty was going to be met with disapproval.'" 717 F.3d at 563. The Seventh Circuit affirmed the district court's holding that the statements were not presumptively prejudicial, explaining: "It is virtually impossible for a human being serving as a juror not to form preliminary opinions about a case while the evidence is presented. Some jurors succumb to the temptation to share those preliminary opinions with others. … We count on the court's final instructions to the jurors and the gravity of the group deliberations to rein in jurors who may struggle with or even make light of their important responsibilities." *Id.* at 565-66. The Seventh Circuit added:

> If we were to find that the court abused its discretion [to deny a hearing regarding pre-deliberation comments by jurors regarding the defendant's guilt] … , the finality of *any* jury verdict could be called into question any time a disgruntled juror made a telephone call after trial. This is precisely the prospect that the Supreme Court sought to avoid in *Tanner*.

*Id*. at 566 n.3; *see also United States v. Benabe*, 654 F.3d 753, 780 (7th Cir. 2011) (holding that "post-verdict contentions" that jurors "may have harbored secret bias were intrinsic, not extrinsic, and no hearing was required").

Here, the court regularly instructed the jurors not to speak among themselves or with others about the case during the trial, and instructed them to restart their deliberations when the alternate juror arrived on early Monday afternoon. Given this, the likelihood of prejudice from

the jurors' pre-deliberation discussions is virtually nonexistent. *See Morales*, 655 F.3d at 629-30

(holding that allegations that jurors made "remarks about witnesses [and] attorney[s]" and made

"[j]okes and other inferences about the case" during the prosecution's case-in-chief were not

prejudicial); *Kimberlin*, 805 F.2d at 243-44 (holding that a juror's pre-deliberation statement

"'[t]hey ought to hang him now, so that we can go home,' or words to that effect," was not

prejudicial); *cf. Oswald v. Bertrand*, 374 F.3d 475, 480-81 (7th Cir. 2004) ("The response to the

jury questionnaires against the background of enormous publicity concerning the most

sensational criminal episode in the county's history, the fact that Oswald seemed so obviously

guilty as to make the necessity for a trial questionable to a layperson, the tumult induced by

Schuenke's vocal complaints, the flagrant disobedience of the judge's instructions that the

prospective jurors not discuss the case in advance of the trial, the likelihood that Schuenke and

perhaps other reluctant jurors would vote to convict regardless of their actual views if that would

make the trial end quicker, the fact that, at least according to Klitzka, the improper discussions

had already produced a consensus that Oswald was guilty as charged—these things, *taken not*

*separately but together*, created a sufficiently high probability of jury bias to require on the part

of the trial judge a diligent inquiry.") (emphasis added). Because the alleged premature

deliberations are not presumptively prejudicial, there is no need to hold a hearing to investigate

Juror B's allegations, let alone vacate the conviction and grant a new trial.

### Conclusion

For the foregoing reasons, Roy's motion for a mistrial is denied.

September 23, 2014

_____
United States District Judge