**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 CR 377-1 |
| | ) | Judge Feinerman |
| ANKUR ROY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT ROY'S MOTION TO RECONSIDER ORDER DENYING HIS
MOTION TO INVESTIGATE JUROR MISCONDUCT AND FOR A MISTRIAL,
AND, IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER FED. R. CRIM. P. 33
AND INCORPORATED MEMORANDUM OF LAW**

The Defendant, ANKUR ROY, through undersigned counsel, respectfully requests that the

Court reconsider its Order of September 23, 2014 denying his motion to investigate juror misconduct

and for a mistrial. Alternatively, Mr. Roy requests that the Court grant him a new trial pursuant to

Federal Rule of Criminal Procedure 33. In support of this motion, the Defendant states as follows:

**I.      Applicable Legal Standard For Granting a New Trial**

Under Federal Rule of Criminal Procedure 33(a), a district court "may vacate any judgment

and grant a new trial if the interest of justice so requires."

**II.      The Court Should Investigate Juror Misconduct and Grant a Mistrial or, in the
Alternative, Grant a New Trial Under Federal Rule of Criminal Procedure 33
Given That Misconduct.**

**A.      Premature Deliberation**

In this Court's Memorandum Opinion Order of September 23, 2014 (Doc. 118), this Court

denied Mr. Roy's motion for a mistrial which was based on juror misconduct without investigating

that misconduct to determine whether his rights to a fair trial and an impartial jury had been violated. In that Order, this Court described an email sent to the Court's staff by "Juror B" three days after the verdict of guilty was returned. Notably, Juror B's email (Doc. 99) said, *inter alia*, that, "[o]n three separate occasions; early during the start of the trial and while evidence was still being presented, I asked the entire room of jurors to stop sharing their thoughts on the trial before deliberations started." In addition, that email said that, "[e]very single juror in the room, except for two, had already expressed a strong dislike of the defendant and his defense counsel--from the very first day." Juror B's email also said that one of the jurors told Juror B that he "had already had made up his mind [that Mr. Roy was guilty] by the third day of the trial."

The Fifth and Sixth Amendments guarantee every defendant in a criminal prosecution the right to a trial by an "impartial jury." *See* U.S. Const. Amend. V and VI; *Irwin v. Dowd*, 366 U. S. 717, 722 (1961) ("the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

A juror's impartiality is jeopardized when jurors discuss the case and form opinions about the defendant's guilt before the beginning of formal deliberations. *See, e.g., Winebrenner v. United States*, 147 F.2d 322, 328 (8th Cir. 1945). In *United States v. Resko*, 3 F.3d 684 (3rd Cir. 1993), the Court set forth at length the dangers of premature deliberations:

> First, since the prosecution presents its evidence first, any premature discussions are likely to occur before the defendant has a chance to present all of his or her evidence, and it is likely that any initial opinions formed by the jurors, which will likely influence other jurors, will be unfavorable to the defendant for this reason.
>
> Second, once a juror expresses his or her views in the presence of other jurors, he or she is likely to continue to adhere to that opinion and pay greater attention to evidence presented that comports with that opinion. Consequently, the mere act of openly expressing his or her views may tend to cause the juror to

-2-

approach the case with less that a fully open mind and to adhere to the publicly expressed viewpoint.

Third, the jury system is meant to involve decision-making as a collective, deliberative process and premature discussions among individual jurors may thwart that goal.

Fourth, because the court provides the jury with legal instructions only after all the evidence has been presented, jurors who engage in premature deliberation do so without the benefit of the court's instructions on the reasonable doubt standard.

Fifth, if premature deliberations occur before the defendant has had an opportunity to present all of his or her evidence (as occurred here) and jurors form premature conclusions about the case, the burden of proof will have been, in effect, shifted from the government to the defendant, who has the burden of changing by evidence the opinion thus formed.

Id. at 689-690 (internal citations omitted). *Accord United States v. Bertoli*, 40 F.3d 1384, 1393 (3rd Cir. 1994) ("Premature deliberations present a number of dangers, all in some manner effecting or touching upon the criminal defendant's Sixth Amendment right"); *Winebrenner*, 147 F.2d at 328 (discussing reasons that the jury should not engage in premature consideration of the evidence).

Courts have a duty to safeguard a defendants' rights to an impartial jury. *See, e.g., Winebrenner*, 147 F.2d at 328-29. The most basic method of doing so is an admonition by the court instructing the jury not to discuss the case or form any opinions until it is submitted for deliberation. *Id.; Resko*, 3 F.3d at 689. If the jury disregards the admonition and discusses the case before submission, it is engaging in jury misconduct. *See, e.g., United States v. Cox*, 324 F.3d 77, 86 (2nd Cir. 2003).

When a district court receives a report of jury misconduct like premature deliberation or premature judgment of guilt, it has a duty to investigate and determine whether the rights to a fair trial and an impartial jury have been violated. In *Resko*, 3 F.3d 687-688, a juror reported to a court

-3-

officer during trial that jurors were discussing the case during recesses and while waiting in the juror room. The district court distributed a questionnaire which asked two questions: 1) whether the juror had participated in discussions about the case with other jurors and, 2) if so, if the juror had formed an opinion about guilt or non-guilt as a result of those discussions. All 12 jurors answered yes to the first question and no to the second. The trial court then denied the defendants' request for further inquiry and their motions for a mistrial. However, the Court of Appeals ordered a new trial because the district court failed to adequately investigate the nature and extent of the discussions in order to ascertain whether there had been any prejudice to the defendants. *Id* at 694.

In *United States v. Vasquez-Ruiz*, 502 F.3d 700, 704 (7th Cir. 2007), in the middle of trial, a juror notified the court that someone had written "GUILTY" in her notebook. The trial judge conducted a limited voir dire of the juror in whose notebook it had been written trying determine if it was authored by an outside source or another juror. When asked to inquire of each juror individually if he or she had written a notation, the trial judge decided that it was "too risky." Instead, the trial judge gave a lengthy "curative" instruction. Noting the trial judge's "implicit finding of fact that another person...either from the jury or from outside had" made the notation, the Seventh Circuit reversed the defendant's conviction because, as a result of the trial judge's very limited investigation, it was unclear if the defendant's rights to an impartial jury had not been compromised. *Id.* at 704. The Seventh Circuit noted that the government bears the burden of rebutting the presumption of prejudice from external influences and then asked "whether the same analysis should apply if the author of the note was really another juror who had prematurely concluded that Vasquez-Ruiz is guilty." In the end, the Seventh Circuit reversed because the record

was to "too sparse" for a reviewing court to conclude that defendant had received a fair trial "even if the writer was another juror." *Id.* at 705.

In the instant case, this Court had a reliable report of serious juror misconduct from Juror B. The premature discussions by the jurors about the trial evidence were so extensive that, on three separate occasions the first of which was ***early*** in the trial, Juror B felt compelled to ask "***the entire room***" to stop. Juror B's email which noted that, from the first day of the trial, 10 of the 12 jurors expressed a "***strong***" dislike of Mr. Roy and his counsel, makes it highly likely that the jurors' repeated premature discussions about the trial evidence were prejudicial to Mr. Roy. Indeed, at least one juror told Juror B that he had "made up his mind" that Mr. Roy was guilty by the third day of the trial.

Despite the seriousness of the misconduct, this Court did not investigate the misconduct or whether Mr. Roy suffered any prejudice from it. The Court did not individually question any of the jurors, neither did it question the jury as a whole. The Court made no attempt to determine whether the jurors remained fair and impartial throughout the trial As a result, we have no way of knowing whether the repeated premature discussions about the trial evidence influenced a jury member's finding of guilt.

Clearly, Rule 606(b) of the Federal Rules of Evidence does not preclude this Court from inquiring about whether these discussions occurred and the prejudice to the defendant arising from these discussions. See *United States v. Kimberlin*, 805 F.2d 210, 243-244 (7th Cir. 1986) ("Communications between jurors made during the course of the trial" are not literally included in the prohibition of Rule 606(b)); *United States v. Farmer*, 717 F.3d 559, 565 (7th Cir. 2013)

("Potentially prejudicial communications that occur before jury deliberations...are not wholly protected by Rule 606(b)....").

Nevertheless, this Court ruled, relying upon *Farmer, supra*, that, before it could investigate Juror B's assertion regarding premature deliberations, this Court had to find that the facts asserted by Juror B were presumed to be prejudicial. However, in *Farmer, supra*, the Seventh Circuit merely stated that, where there are allegations that prejudicial communications occurred before jury deliberations, "while a juror still may not testify to 'the effect of the communication upon his mind or emotions, or concerning his mental processes in connection with the verdict,' the district court may consider whether such statements [of the jurors] should be presumed prejudicial." *Id.* at 565 (citations omitted). Thus, the *Farmer* Court simply noted that there is a big difference between an inquiry into a juror's mental processes or emotions which is forbidden and an inquiry into a juror's pre-deliberation communications which is permissible. *Id*. Indeed, the *Farmer* Court stated that "Rule 606(b) does not prevent consideration [by the district court] of evidence of the [juror's pre-deliberation] statements or conduct...." 717 F.3d at 565.

Furthermore, because this Court did not question Juror B or any of the jurors, the specific statements of the jurors about the trial evidence prior to deliberating are unknown. Accordingly, Mr. Roy should not be held to a standard requiring him to prove that the pre-deliberation statements of the jurors were presumptively prejudicial. Moreover, prejudice should clearly be presumed in a case like the instant case where, according to Juror B, ten of the jurors ***strongly*** disliked and, thus, were biased against Mr. Roy and his counsel from the start of the trial, at least one juror made up his mind that Mr. Roy was guilty in the middle of the trial and "the entire jury room" had to be urged by Juror B to stop discussing the trial evidence on multiple occasions including at the beginning of the trial.

Indeed, the Seventh Circuit has held that the adequacy of a judge's actions in the face of allegations of misconduct "is a function of the probability of bias; the greater the probability, the more searching the inquiry needed..."  *Oswald v. Bertrand,* 374 F.3d 475, 480 (7th Cir. 2004).

As previously explained, the Court in *Resko*, *supra*, ordered a new trial because the trial judge erred in not adequately investigating whether the defendant was prejudiced by the jurors' premature discussions about the case.  The Seventh Circuit has relied upon *Resko* and cited it with approval in holding that a district court's failure to investigate juror misconduct required reversal. *See United States v. Vasquez,* 502 F.3d 700, 707 (7th Cir. 2007).  The crucial factors which created the *Resko* decision are noteworthy.  In *Resko*, just as in this case, the trial judge admonished the jury not to talk about the case.  Furthermore, in *Resko*, the trial judge handled the allegation of premature deliberations by using a questionnaire to determine whether there had been discussions of the case and whether there was prejudice.  Here, there was no investigation whatsoever in response to Juror B's email.  In *Resko*, the jurors were able to acknowledge their discussions.  Here, the total failure of the Court to respond to Juror B's email by questioning the jurors precluded complete disclosure of the jurors' discussions.

## B.    The Extraneous Matter Considered by the Jury but Not Admitted

Once a defendant establishes that extraneous factual matters have, in fact, reached a jury, prejudice is presumed.  *Remmer v. United States*, 347 US 227, 229 (1954).  At that point "the burden rests heavily on the government to establish...that such contact with the juror was harmless to the defendant."  *Id.*

During jury deliberations in this case, a purported "law" that was not admitted into evidence at the trial was considered by the jury. More specifically, Juror B wrote in her email to this Court, in pertinent part, as follows:

> [Juror D][1] indoctrinated me on a CEO's legal obligations, stating that **by law he is required to know where funds are coming from.** [Two other jurors] agreed. [One of these two jurors] assured me this was the case from his own experience in managing. They also said it was illegal to withdraw ill-gotten funds**. I asked for proof of law and [these same two jurors] submitted that in fact, that was the law.**
>
>                                ***
>
> I asked if I could send a note to the judge, asking about the defendant's legal responsibility and criminal liability for investigating the source of all funding on his company's account. I agreed that I would return a guilty verdict if it was defendant's legal and criminally liable responsibility. The note came back saying something to the effect of "no answer."

(Doc. 99) (emphasis added). The veracity of these assertions in Juror B's email is supported by the fact that, during the jury deliberations, Juror B sent a note to the Court asking: "Is it the defendant's legal burden to know and investigate the source(s) of funding in his company's bank account? (With criminal liability)." (Doc. 93).

In this Court's Memorandum Opinion and Order of September 23, 2014, this Court recognized that, pursuant to Rule 606(b)(2), a juror may testify that "extraneous prejudicial information was improperly brought to the jury's attention." However, this Court ruled that the consideration by the jurors of a purported law requiring CEOs to know the source of all money deposited into a company's bank account was not "extraneous prejudicial information" because it was not physical evidence such as "a business school textbook, or a copy of the Illinois Business Corporations Act." (Doc. 118 at 6). Mr. Roy respectfully submits that this ruling was error.

---

[1]This Court referred to this named juror as "Juror D" in its Memorandum Opinion Order of September 23, 2014. Mr. Roy will continue to do so in this motion.

It is well recognized that:

> Extrinsic or extraneous influences include publicity received and discussed in the jury room, ***matters considered by the jury but not admitted into evidence***, and communications or other contact between jurors and outside persons. Extrinsic or extraneous influences may be grounds for impeaching a verdict.

*E.g., United States v. Swinton,* 75 F.3d 374, 381 (8th Cir. 1996)(emphasis added). Discussion of a purported law which was not introduced at the trial fits the category of "matters considered by the jury but not admitted into evidence." Furthermore, this "law," need not have been in written form to fit within this category because information may be considered extraneous even if it originates with a juror. *Swinton,* 75 F.3d at 381. All that is required for information to qualify as being improper extraneous information is an allegation that the jury considered a juror's specific statement of a fact that is not commonly known and was not admitted into evidence. *Id.*

As explained by the Court in *Swinton,* 75 F.3d at 381:

> Although jurors are expected to bring commonly known facts to bear in assessing the facts presented for their consideration, resort by a juror to anything other than common knowledge or record facts might be held to violate the right to confrontation. 3 Weinstein's Evidence, ¶ 606[04], at 606-44, 46 (1995); *see also United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir. 1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971).

Indeed, in *United States ex rel. Owen v. McMann*, 435 F. 2d 813 (2d Cir. 1970), *cert. denied,* 402 U.S. 906, (1971), Judge Friendly thoroughly discussed this issue and concluded that "[t]here is no rational distinction between the potentially prejudicial effect of extra-record information which a juror enunciates on the basis of the printed word and that which come from his brain."

Thus, it is respectfully submitted that, in this case, where Juror D and two other jurors were claiming extraneous and higher knowledge concerning a "law," this Court should have investigated

-9-

the matter further and then declared a mistrial instead of declining to do so because the purported "law" was not produced in written form.

Furthermore, this Court erred in ruling that the "law" at issue, which Juror D said was the authoritative source on the functions of CEOs such as Mr. Roy, was merely a commonly known background fact.  In *United States v. Weiss*, 579 F. Supp 1224, 1238, (S.D.N.Y 1983), where the defendant was a certified public accountant, the Court held that "an undisputed error was committed" when a juror told his fellow jurors about an accounting textbook's description of the functions of certified public accountants even though the textbook was never brought into the jury room.  The *Weiss* Court held that the sharing of this information constituted "extraneous information." *Id*.

In so holding, the *Weiss* Court noted that, even if one or more of the jurors knew the functions of a certified public accountant from their general knowledge, the sharing of this information with the other jurors would not have been the equivalent of telling them about an "***authoritative*** textbook definition," which constitutes  the sharing of extraneous information.  578 F.Supp at 1239 (emphasis in text).  Similarly, in the instant case, even if one or more of the jurors knew the functions of a CEO from their general knowledge, it was their representation to Juror B and the other jurors that this information came from the highest possible "***authoritative***" source - a "law" -  that rendered this information "extraneous."

Significantly, the record indicates that at least one of the jurors, Juror B, deemed this purported "law" to be highly relevant to the issue of Mr. Roy's criminal knowledge because Juror B wrote a note to this Court seeking to verify its existence.  And, Juror B said in her email that she told her fellow jurors that she would vote "guilty" if such a law existed. Notably, there is no such

-10-

"law." Accordingly, even if *Remmer, supra,* did not require that prejudice be presumed, the existence of prejudice to Mr. Roy is evident from the record.

WHEREFORE, for all of the foregoing reasons, Mr. Roy requests that the Court reconsider its Order of September 23, 2014 denying his motion to investigate juror misconduct and for a mistrial. Alternatively, on the basis of the individual and cumulative effect of the grounds raised, Mr. Roy requests that the Court grant him a new trial.

Respectfully submitted,

/s/ Marcia J. Silvers
Marcia J. Silvers, Esq.
Attorney for Defendant Roy
MARCIA J. SILVERS, P.A.
770 South Dixie Highway, Suite 113
Coral Gables, Florida 33146
Telephone: 305/774-1544
Facsimile: 844/270-5670
Email: marcia@marciasilvers.com

Keith S. Yamaguchi, Esq.
Local Counsel
KAPLAN, MASSAMILLO & ANDREWS, LLC
200 West Madison Street
16th Floor
Chicago, Illinois 60606
Telephone: 312/345-3039

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 26th day of February 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF; the ECF system will automatically serve counsel of record.

/s/ Marcia J. Silvers
Marcia J. Silvers, Esq.

-11-